Craig K. Vernon (USB No. 16737)
James, Vernon & Weeks, P.A.
1626 Lincoln Way
Coeur d'Alene, ID 83814
Phone: (208) 667-0683

*Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTAL DIVISION

| | |
|---|---|
| JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, JOHN DOE 1, and JOHN DOE 2,<br><br>Plaintiffs,<br><br>vs.<br><br>DOE 1 MALE DEFENDANT and DOE 2 FEMALE DEFENDANT, a community;<br><br>Defendants. | Case No. 2:18-cv-_____<br>Judge:<br><br>**COMPLAINT AND REQUEST FOR JURY TRIAL**<br><br>JURY DEMANDED |

COMES NOW the Plaintiffs, JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, JOHN DOE 1 and JOHN DOE 2, and through their undersigned counsel bring this Complaint and Request for Jury Trial ("Complaint") against Defendants DOE 1 MALE DEFENDANT and DOE 2 FEMALE DEFENDANT, a community, based upon information and belief available at the time of the filing.

## I.  PARTIES, JURISDICTION AND VENUE

1.      JANE DOE 1 is a citizen of the State of Maryland, residing in Maryland.  JANE DOE 2 is a citizen of the State of California, residing in California.  JANE DOE 3 is a citizen of

COMPLAINT AND REQUEST FOR JURY TRIAL - 1

the State of Utah, residing in Utah. JANE DOE 4 is a citizen of the State of Arizona, residing in Arizona. JOHN DOE 1 is a citizen of the State of Utah, residing in Utah. JOHN DOE 2 is a citizen of the State of Utah, residing in Utah. Plaintiff's true names have been provided to attorneys for Defendants prior to the filing of this complaint.

2. Defendants, DOE 1 MALE DEFENDANT and DOE 2 FEMALE DEFENDANT, are citizens of the State of Utah, residing in Utah.

3. Plaintiffs bring this Complaint under federal question and supplemental jurisdiction, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, as this court holds original jurisdiction over Plaintiffs' 18 U.S.C. § 2251 claim, and the other claims in this action are so related as to form part of the same case.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## II. FACTUAL ALLEGATIONS

### A. BACKGROUND INFORMATION

5. This complaint references terms commonly used by members of the Church of Jesus Christ of Latter-Day Saints (hereinafter "LDS Church" or "the Church"). All parties were members of the LDS Church (or children blessed in the Church and not yet members because they had not yet reached the age of 8) at the time of the events described.

### B. SEXUAL CRIMES COMMITTED AGAINST JANE DOE 1, JANE DOE 2, AND JOHN DOE 1

6. JANE DOE 1, JANE DOE 2, and JOHN DOE 1 ("Plaintiff Group 1") are the biological children of a sexual predator, hereinafter referred to as "Perpetrator." The Perpetrator is no longer a living person having committed suicide in 1995. Defendants DOE 1 MALE DEFENDANT and DOE 2 FEMALE DEFENDANT, along with Perpetrator (who were in the same LDS ward in Bountiful, Utah) committed sexual abuse, when the opportunity allowed,

COMPLAINT AND REQUEST FOR JURY TRIAL - 2

against JANE DOE 1, JANE DOE 2, and, after he reached approximately a year old, JOHN DOE 1, from approximately early 1984 to late 1985 (or early January 1986) in Bountiful, Utah. At the time of the abuse, Plaintiffs were all under the age of nine. There were other similarly aged children, believed to be in the same LDS ward, who, along with Plaintiffs, were also victims of these crimes.

7. DOE 1 MALE DEFENDANT and DOE 2 FEMALE DEFENDANT led what they called "touching parties" at their home and at the Perpetrator's home. These "touching parties" were sometimes attended by acquaintances and friends of Defendants and Perpetrator. In addition, a 16-year-old babysitter, who was a young woman in this same LDS ward, would be present from time to time. It is believed that this babysitter was both a victim of crimes against her and a perpetrator of crimes. This 16-year-old babysitter is no longer living as it is believed that she, like the Perpetrator, committed suicide. The parties would occur one to two times per month, seemingly whenever there was opportunity for the adults to isolate the children.

8. During these "touching parties," some of the Plaintiff's in Plaintiff Group 1 would be forced to undress and perform acts of sexual perversion. Typically, the "touching parties" would begin with the adults instructing the children to "put on a show" for them, including dancing and ending with the children undressing, while the adults applauded and encouraged. Once the children were naked, Defendants, Perpetrator and any others present would sexually assault the children by touching their genitals, and vaginally and anally penetrating them with fingers and objects such as crayons or candy.

9. DOE 1 MALE DEFENDANT and DOE 2 FEMALE DEFENDANT, along with Perpetrator and others present at these parties, would force the children to touch the genitals and/or breasts of the others present. The children were additionally forced to put their mouths on and lick

the genitals of DOE 1 MALE DEFENDANT and Perpetrator.  DOE 1 MALE DEFENDANT and Perpetrator would not fully undress but would expose their penises to the children and coerce and manipulate the children to perform these vile acts, which the adults would call "marriage lessons."

10. On at least one occasion, the children were forced to watch as Perpetrator had sex with (statutorily raped) the 16-year-old babysitter; on another occasion Perpetrator had sex with the children's paternal grandmother, Perpetrator's mother, while the children were forced to watch.

11. Furthermore, DOE 1 MALE DEFENDANT, DOE 2 FEMALE DEFENDANT and Perpetrator would put candy on the children's genitals and force the other children to lick the candy off.  JANE DOE 1 remembers this occurring when her brother, JOHN DOE 1, was just a year old.  Defendants and/or Perpetrator (depending on the occasion) would remove JOHN DOE 1's clothing, touch his penis until he was erect, put powdery candy on his erect penis, and make the other children, including his siblings, lick the candy off him.

12. Over time, DOE 1 MALE DEFENDANT and DOE 2 FEMALE DEFENDANT began videotaping the "touching parties."  JANE DOE 1, who was the oldest of the children at the time of the assaults, recalls the Defendants videotaping the children dancing and undressing and continuing to film as the sexual assaults and rapes occurred.

13. In addition to the children of Plaintiff Group 1, other young children from the ward were also victims of sexual assaults and rapes at these parties.

14. Included herein as *Exhibits 1, 2, and 3* are redacted versions of declarations from JANE DOE 1, JANE DOE 2, and JOHN DOE 1, respectively, explaining the horrific abuse they suffered at the hands of Defendants and Perpetrator.  Also included as *Exhibit 4* is a declaration from JANE DOE 5, another victim of these crimes who is not a party to this lawsuit.

## C. DISCLOSURE OF THE ABUSE AND EVENTS FOLLOWING

15. In January of 1986, the mother of JANE DOE 1, JANE DOE 2, and JOHN DOE 1 (hereinafter "MOTHER 1") heard from a neighbor that the neighbor's children were being sexually abused. As a precaution, she took JANE DOE 1 to the Intermountain Sexual Abuse Treatment Center (ISAT) to engage in counseling sessions. At these sessions, JANE DOE 1 disclosed that she had been abused by the 16-year-old babysitter (who was previously mentioned in the paragraphs above) and two unknown teenage boys. Shortly thereafter, MOTHER 1 spoke with her local LDS Bishop and his First Counselor about the abuse. DOE 1 MALE DEFENDANT, who was the Second Counselor of this LDS ward at the time, was notably absent from the meeting. Initially, these men were very supportive of MOTHER 1's efforts to investigate the abuse.

16. Shortly thereafter, JANE DOE 1 identified to MOTHER 1 that DOE 1 MALE DEFENDANT and DOE 2 FEMALE DEFENDANT sexually assaulted children at so called "touching parties."

17. Roughly a week after DOE 1 MALE DEFENDANT and DOE 2 FEMALE DEFENDANT were identified for their part in these crimes against children, the children of Plaintiff Group 1 and their mother arrived at sacrament meeting on Sunday to find an Apostle, who had not ever visited their ward until that time, sitting with his daughter DOE 2 FEMALE DEFENDANT and her children in the congregation.

18. Shortly after the visit by the Apostle in late January or early February 1986, JANE DOE 1 identified Perpetrator, her own father, as participating with DOE 1 MALE DEFENDANT and DOE 2 FEMALE DEFENDANT in committing these heinous crimes against children.

19. After these disclosures, MOTHER 1 decided to take her children to Hawaii to visit their grandparents. In March of 1986, Perpetrator began psychiatric evaluation and treatment at

COMPLAINT AND REQUEST FOR JURY TRIAL - 5

Johns Hopkins in Maryland. He was discharged in June 1986 with the principal diagnosis of pedophilia.

20. Subsequently, the children of Plaintiff Group 1 and their mother were approached by Neil A. Maxwell, another Apostle of the Church, who gave each of the children and their mother a priesthood blessing in an attempt to help them heal from the horrors of the sexual abuse and crimes committed against them. In these blessings, Maxwell discussed how the perpetrators of the sexual crimes made "horrible choices" and that God would be the judge of the perpetrators. Maxwell further blessed each of them for comfort and instructed them to "forgive and forget".

21. The children of Plaintiff Group 1 continued to receive psychiatric treatment for much of their adolescence. Their psychiatrist was Dr. Paul L. Whitehead, a board-certified specialist in child and adolescent psychiatry. Dr. Whitehead began treating JANE DOE 1, JANE DOE 2, JANE DOE 5, and JOHN DOE 1 a few months after the abuse ended and continued to treat them until they were 18, 16, 13 and 18, respectively. Included herein as *Exhibit 5* is a redacted version of Dr. Whitehead's declaration, which confirms that all the children were badly damaged as a result of the horrific sexual abuse they endured at the hands of DOE 1 MALE DEFENDANT, DOE 2 FEMALE DEFENDANT and Perpetrator.

22. Also included herein as *Exhibit 6* is the redacted version declaration of MOTHER 1, detailing the disclosure to her of the abuse her children suffered as well as the steps she took following the disclosure.

### D. SEXUAL CRIMES COMMITTED AGAINST JANE DOE 3, JANE DOE 4, AND JOHN DOE 2

23. Sometime after divorcing MOTHER 1, Perpetrator began a relationship with, and later married the mother of JANE DOE 3, JANE DOE 4, and JOHN DOE 2, collectively Plaintiff Group 2. Perpetrator and the mother of Plaintiff Group 2 (hereinafter "MOTHER 2") had two

children together, including JOHN DOE 2. MOTHER 2 married Perpetrator in 1988.

24.     In an effort to prevent further sexual crimes from occurring against Perpetrator's new children and step-children, Perpetrator's first wife, MOTHER 1, called his second wife, MOTHER 2, and attempted to inform her that Perpetrator was a pedophile and that he abused her four children. MOTHER 2 did not believe her and relied upon the decision of Church leaders not to excommunicate or punish Perpetrator as proof that Perpetrator and the Defendants did not commit the heinous acts they were being accused of. Tragically, unbeknownst to MOTHER 2, Perpetrator began sexually abusing the children of Plaintiff Group 2 almost immediately after they moved into his home with MOTHER 2. He sexually assaulted JANE DOE 3 and JANE DOE 4 two to three times a week on average and began sexually assaulting JOHN DOE 2 shortly after he turned a year old.

25.     The sexual assaults committed against Plaintiff Group 2 by Perpetrator were horrific. Perpetrator would isolate JANE DOE 3 and JANE DOE 4 in the upstairs bathroom of their home, fondle them, and vaginally and anally rape them with his fingers. Additionally, Perpetrator would use his penis and other objects, such as brush handles to vaginally and anally penetrate them. At other times, Perpetrator would force JANE DOE 3 and JANE DOE 4 to perform oral sex on him. On these occasions, Perpetrator was not fully naked, but wore his temple garments during these heinous crimes. Perpetrator would often ejaculate on JANE DOES 3 and 4.

26.     These sexual assaults occurred most frequently in the upstairs bathroom of the home, but sometimes, when MOTHER 2 was out of the house, also occurred in the bedroom of Perpetrator and MOTHER 2.

27.     On one occasion, JANE DOE 4 remembers Perpetrator using excessive violence in

his abuse. That night, missionaries from the Church had attended dinner at their home; JANE DOE 4 was asked to say the prayer at dinner and she prayed that JANE DOE 3, with whom she shared a bed, would stop peeing the bed. Perpetrator became very angry at her prayer and that night, after the missionaries had left the home, Perpetrator took her to the bathroom where he inserted a pencil into her vagina and stabbed repeatedly and with such force that the pencil broke inside her. Perpetrator panicked and fearing that he would have to take JANE DOE 4 to the hospital, dug inside her vagina until he was able to retrieve the pencil. This was very painful and caused considerable damage.

28. As a result of the abuse inflicted upon her by Perpetrator, JANE DOE 4 had to undergo reconstructive surgery on her vaginal canal at age 15 due to excessive scar tissue. Later in life, JANE DOE 4 additionally had to have part of her cervix removed due to excessive scar tissue, causing all her children to be born prematurely.

29. As a toddler, JOHN DOE 2 would become hysterical if he was left alone with Perpetrator, if he was made to shower with Perpetrator, or if Perpetrator ever changed his diaper.

30. In August of 1995, JANE DOE 3 and JANE DOE 4 disclosed to MOTHER 2 the abuse they suffered at the hands of Perpetrator. MOTHER 2 contacted the Utah Department of Children and Family Services and Perpetrator moved out of the house. The next day, Utah police executed a warrant for Perpetrator's arrest and he fled the state to Arizona. When he returned to Utah in October of 1995, he committed suicide.

31. MOTHER 2 would never have married Perpetrator but for the fact that she believed the allegations against him were lies. As a devout member of the Church and employee of the Church (she worked at the Church Office Building in the membership department) MOTHER 2 was familiar with the handbooks and polices of the Church. Per Church policy, she was convinced

that these allegations were false. Because, if true, the Perpetrator and the Defendants would have been excommunicated for sexually assaulting and raping kids.

32. Included herein as *Exhibits 7 and 8*, respectively, are redacted declarations of JANE DOE 3 and JANE DOE 4, detailing the horrific abuse they were forced to endure for several years during their adolescence. Also included as *Exhibit 9* is the declaration of MOTHER 2, detailing the disclosure to her of the abuse her children suffered as well as steps she took after the disclosure.

### III. CLAIMS SPECIFIC TO JANE DOE 1, JANE DOE 2, AND JOHN DOE 1 (PLAINTIFF GROUP 1)

#### A. FIRST CAUSE OF ACTION: SEXUAL ASSAULT, BATTERY AND CHILD RAPE

33. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

34. This claim is brought within 35 years of each of the victims' 18th birthdays under Utah Code § 78B-2-308(7) and has therefore been timely brought.

35. Plaintiffs JANE DOE 1, JANE DOE 2, and/or JOHN DOE 1, (collectively "Plaintiff Group 1") were sexually molested, sexually assaulted, forced to perform sexual acts and raped by DOE 1 MALE DEFENDANT and DOE 2 FEMALE DEFENDANT as explained in the paragraphs above.

36. DOE 1 MALE DEFENDANT and DOE 2 FEMALE DEFENDANT, by their wrongful actions, proximately caused JANE DOE 1, JANE DOE 2, and JOHN DOE 1 to suffer severe and permanent, physical, emotional and mental injuries.

37. As a result of the above-described conduct, JANE DOE 1, JANE DOE 2, and JOHN DOE 1 have suffered, and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer

spiritually; were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life; have sustained and will continue to sustain loss of earnings and earning capacity; and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

### B.  SECOND CAUSE OF ACTION: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

38. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

39. Since January of 1986, DOE 1 MALE DEFENDANT and DOE 2 FEMALE DEFENDANT have successively utilized their status within the Church, both as leaders in their own right and as the daughter and son-in-law of an Apostle of the Church, to cover up the crimes they committed against JANE DOE 1, JANE DOE 2, and JOHN DOE 1.  This included (lockstep with Perpetrator) lying to the police and influencing the criminal investigation; influencing leaders of the Church to ignore Church policy and not convene a Church disciplinary hearing against themselves or Perpetrator; and further actions which encouraged and enabled Defendants and Perpetrator to escape criminal prosecution and not be excommunicated from the Church for the heinous sexual crimes they committed against these children.

40. Since 1986, these Defendants actively engaged in covering up this criminal activity. While Perpetrator committed suicide in 1995, Defendants continued to be promoted to higher and higher church callings, including a highly coveted and esteemed position as a Mission President. Defendants, by their actions and inactions, have caused JANE DOE 1, JANE DOE 2, and JOHN DOE 1 severe emotional distress. This emotional distress has been ongoing.

41. Defendants were negligent in their actions, courses of conduct, and omissions as described hereinabove.

42. Defendants knew or should have known that emotional distress, with physical

COMPLAINT AND REQUEST FOR JURY TRIAL - 10

manifestations, was the likely or foreseeable result of their actions, courses of conduct, and omissions as described hereinabove.

43. Defendants' actions, courses of conduct, and omissions were the direct and proximate cause of JANE DOE 1, JANE DOE 2, and JOHN DOE 1's severe emotional distress with physical manifestations.

44. The emotional distress sustained by JANE DOE 1, JANE DOE 2, and JOHN DOE 1 was of such nature that a reasonable person in their situation would have likely suffered similar emotional distress, with physical manifestations.

45. As a result of the above-described conduct, JANE DOE 1, JANE DOE 2 and JOHN DOE 1 have suffered, and continue to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer spiritually; were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life; have sustained and will continue to sustain loss of earnings and earning capacity; and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## IV. CLAIMS SPECIFIC TO JOHN DOE 1

### THIRD CAUSE OF ACTION:
### 18 U.S.C. §2251 - SEXUAL EXPLOITATION OF A CHILD BY DEFENDANTS

46. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

47. By their actions, DOE 1 MALE DEFENDANT and DOE 2 FEMALE DEFENDANT induced, enticed, and coerced JOHN DOE 1 to participate in the activities described hereinabove.

48. The Defendants did so with the intent that JOHN DOE 1 (and the older children

who were present at the time) engage in sexually explicit content for the purpose of producing a visual depiction of such conduct.

49. The visual depiction was produced using materials that, upon information and belief have been mailed, shipped or transported in or affecting interstate commerce.

50. JOHN DOE 1 was a minor at the time of production of these visual depictions (as were the older children who were present at the time) and was at all times of filming less than two years of age.

51. This resulted in injuries that caused and will continue to cause JOHN DOE 1 to suffer great pain of mind and body, shock, severe and extreme emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered and continues to suffer spiritually; was prevented and will continue to be prevented from performing his daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

52. JOHN DOE 1's claim is not barred by the applicable statute of limitations as he did not discover that he was videotaped until 2018. As this claim is brought within ten years of the discovery of the injury that forms the basis of this claim, it has been timely filed.

### V.  CLAIMS SPECIFIC TO THE JANE DOE 3, JANE DOE 4, AND JOHN DOE 2 (PLAINTIFF GROUP 2)

#### A.   FOURTH CAUSE OF ACTION: SEXUAL ASSAULT, BATTERY AND CHILD RAPE ENCOURANGED AND ENABLED BY THE COVER-UP OF DEFENDANTS

53. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

54. This claim is brought within 35 years of each of the victims' 18th birthdays under

Utah Code § 78B-2-308(7) and has therefore been timely brought.

55. From approximately 1988 to 1995, while Perpetrator was married to their mother and resided with them in their family home, Perpetrator repeatedly sexually assaulted and raped his step-daughters JANE DOE 3 and JANE DOE 4. The sexual assaults inflicted upon JOHN DOE 2 started in late 1994 or early 1995.

56. Perpetrator penetrated JANE DOE 3 and JANE DOE 4 vaginally and anally using his fingers, his penis and household objects. Perpetrator forced JANE DOE 3 and JANE DOE 4 to perform oral sex on him. He also sexually assaulted JOHN DOE 2 when he was around a year old.

57. Defendants' liability for the criminal acts of Perpetrator, who is dead, arises from Utah Code § 78B-2-308(6)(b) which references § 76-2-202. Here, Defendants engaged in affirmative acts (as described in the paragraphs above) to embolden, help and therefore encourage Perpetrator in committing these heinous crimes against Plaintiff Group 2.

58. As a result of these actions, most specifically, Defendants protecting themselves and Perpetrator from being excommunicated, MOTHER 2 believed that Perpetrator was safe and a righteous priesthood holder. She then married him, allowing him access to her daughters.

59. DOE 1 MALE DEFENDANT and DOE 2 FEMALE DEFENDANT, by their wrongful actions, were a proximate cause of significant damage to JANE DOE 3, JANE DOE 4, and JOHN DOE 2. Defendants are therefore liable under Utah Code § 78B-2-308(6)(b) for encouraging Perpetrator in commission of further crimes against children.

60. As a result of the above-described conduct, JANE DOE 3, JANE DOE 4, and JOHN DOE 2 have suffered, and continue to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem,

COMPLAINT AND REQUEST FOR JURY TRIAL - 13

disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer spiritually; were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life; have sustained and will continue to sustain loss of earnings and earning capacity; and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

### B. FIFTH CAUSE OF ACTION: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

61. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

62. From approximately late 1988 to early 1995, Perpetrator frequently and violently assaulted and raped JANE DOE 3 and JANE DOE 4 vaginally, anally and orally with the use of his hands, penis, and objects found around the house.

63. During this period, and with full knowledge of Perpetrator's prior sexual assaults and rapes of children, DOE 1 MALE DEFENDANT and DOE 2 FEMALE DEFENDANT continued to actively cover up their crimes and the crimes Perpetrator committed alongside them.

64. Defendants were negligent in their actions, courses of conduct, and omissions as described hereinabove.

65. Defendants knew or should have known that emotional distress, with physical manifestations, was the likely or foreseeable result of their actions.

66. Defendants' actions, including the conspiracy of silence they orchestrated, were a direct and proximate cause of JANE DOE 3, JANE DOE 4, and JOHN DOE 2's severe emotional distress with physical manifestations.

67. The emotional distress sustained by JANE DOE 3, JANE DOE 4, and JOHN DOE 2 was of such nature that a reasonable person in their situation would have likely suffered similar emotional distress, with physical manifestations.

COMPLAINT AND REQUEST FOR JURY TRIAL - 14

68. As a result of the above-described conduct, JANE DOE 3, JANE DOE 4, and JOHN DOE 2 have suffered, and continue to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer spiritually; were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life; have sustained and will continue to sustain loss of earnings and earning capacity; and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**RESERVATION OF RIGHTS TO SEEK COURT PERMISSION TO AMEND THE COMPLAINT TO ADD ADDITIONAL DEFENDANTS AT A LATER DATE**

Plaintiffs reserve their rights to seek permission from the Court to amend this complaint at a later date to add other living individuals believed to be liable under Utah Code § 78B-2-308(6)(b) for enabling and encouraging Perpetrator in commission of further crimes against children. This may include, but is not limited to, the Bishop of this LDS ward, the Stake President, and the father and father in law of DOE 2 FEMALE DEFENDANT, and DOE 1 MALE DEFENDANT. It is believed that one or more of these persons used their influence in the Church and the community, acting with DOE 1 MALE DEFENDANT, DOE 2 FEMALE DEFENDANT and Perpetrator so that they did not face requisite punishment by the Church or by the law for the heinous crimes they committed against children in the mid 1980's. By their affirmative acts, it is believed that at least one or more of these persons messaged to other members of the Church that Perpetrator and Defendants were safe and trustworthy members by actively choosing not to hold a Church disciplinary counsel resulting in the excommunication of those who sexually harmed children. By doing so, at least one or more of these persons acted with DOE 1 MALE DEFENDANT and DOE 2 FEMALE DEFENDANT in encouraging and enabling Perpetrator to continue to commit similar

heinous crimes against JANE DOES 3 and 4 and JOHN DOE 2.

**WHEREFORE**, Plaintiffs pray for judgment against DOE 1 MALE DEFENDANT and DOE 2 FEMALE DEFENDANT, as follows:

1. Non-economic damages as set forth above, in an amount to be determined by the jury at the time of trial;

2. Economic damages for medical expenses for psychological treatment, therapy, and counseling, and loss of earnings and earning capacity in an amount to be determined by the jury at the time of trial;

3. For Plaintiffs' reasonable attorney's fees, costs and disbursements to the extent permitted by law;

4. Statutory/civil penalties according to law; and

5. For any other relief this Court deems just and equitable.

DATED this   2nd   day of October, 2018.

                JAMES, VERNON & WEEKS, P.A.
                *Attorneys for Plaintiffs*

                Craig K. Vernon, USB 16767